# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KENTORIA A. JOHNSON, | : | Case No. 3:17-cv-00259 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| COMMSSIONER OF THE SOCIAL SECURTY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. Introduction

Plaintiff Kentoria A. Johnson applied for Disability Insurance Benefits and Supplemental Security Income in March 2014, asserting that as of February 4, 2014, she could no longer work due to intracranial hypertension (brain inflammation), elevated cerebrospinal fluid, demyelinating disease of central nervous system, severe migraines, shoulder pain, upper and lower back pain, anxiety, depression, and obsessive-compulsive disorder. (Doc. #6, *PageID* #355).

Administrative Law Judge Benjamin Chaykin concluded that Plaintiff was not eligible for benefits because she was not under a disability. He consequently denied Plaintiff's

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

applications. Plaintiff brings this case challenging ALJ Chaykin's decision.

## II. Background

### A. <u>Plaintiff And Her Testimony</u>

Plaintiff was 36 years old, or a "younger" person, on the date she assertedly became disabled. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school education. Before she applied for benefits, she worked as a home health aide, sales clerk, and store laborer.

During an administrative hearing before ALJ Chaykin, Plaintiff testified that she is single. Her pet dog and her 20-year-old son live with her. She has a driver's license and drives once or twice a week to doctor appointments. She otherwise drives once a month to pick up things she needs like groceries. Her son does most of the grocery shopping. She feels uncomfortable going out because she does not like being around people. She feels like she's always being watched when she leaves home, and it makes her feel very uncomfortable.

Plaintiff last worked full time in 2013 as a home health aide. That job ended when her employer went out of business. She testified, "that's when I started to go under too. I was having some mental issues that [were] affecting my work." (Doc. #6, *PageID* #105). She explained that she unsuccessfully tried to find another job. *Id.* at 107.

Plaintiff testified that pain in her legs and knees from multiple sclerosis makes her unable to sit too long. She estimates that she could stand for 15-20 before her legs will give out. *Id.* at 107-08. She was "having falls" when her legs gave out. *Id.* at 108.

Eight weeks before the ALJ's hearing, she fell and broke her foot. *Id.* at 108, 121-23. Her foot was placed in a cast for two weeks and then in a boot, which she was still wearing at the time of the hearing. Plaintiff told ALJ Chaykin: "I was standing, trying to do some activities around the house and I just fell. I stood up for too long and … I didn't trip over anything, I didn't fall over anything, I just fell. My legs just—slid out from up under me." *Id*. at 121. She noted that she will first get dizzy, then lightheaded, and then her legs will go out. *Id*. at 122. She will sometimes fall when she's "not even walking." *Id*. at 123.

Plaintiff testified that she suffered headaches about twice a week. Her headaches are "more like migraines"—they immobilize her by making her sick to her stomach and causing her to throw up and become weak. *Id.* at 111. Lying down flat makes her headaches worse. She explained, "I have to be in a certain position to kind of get them to go away. I have so many things that I do to try to cater to these headaches as much as I can so that they don't come on so much, but if the meds [are] only doing so much then there's only so much that I can do too." *Id.* at 112. Her prescribed meds include Depakote to help prevent headaches, Diamox to keep her spinal fluid down, and Amitriptyline to suppress her headaches. *Id.* at 112. When she feels a headache coming on, she needs to turn off the lights and "prop myself in the proper position to lay back with my towel over my eyes." *Id.* at 119-20. Noise and extreme light will bring on a headache or make it worse. If she stands too long, she will get a headache and get dizzy. Headaches also cause her vision to get "real blurry to where [she] can't see much of

anything." *Id*. at 121. Her briefest headache lasted three hours; her longest lasted six hours. *Id.* at 120. Once her headache subsides, she is able to go back to normal activities.

When asked about her vision, Plaintiff testified that she gets blurry vision a lot. Sometimes she will "just have a blur go across [her] eye." *Id*. at 116. From time to time her vision gets "pitch black for a couple of seconds." *Id*. at 117. She underwent Lasik surgery to repair holes and tears in the back of her retinas. She uses eye drops. Every morning her eyes are stuck together, and she must "peel them apart because of all the mucus that gets in [her] eye." *Id.*

She described a typical day as making coffee, taking care of personal hygiene, and then eating breakfast. *Id.* at 123. She feeds her dog but does not walk him. She testified that her meds "kind of immobilize[]" her and lead her to take naps. *Id.* at 125. Her son takes care of the housecleaning and helps with the laundry because she is unable to reach into the dryer. *Id.* at 118, 125-26. She would not be able to reach forward, fold towels, or put things together on a table in front of her for three or six hours per day. *Id.* at 118-19. Her son stays with her "mostly everywhere [she] goes because he's really concerned about [her], so he says." *Id*. at 127.

**B.** **Medical Evidence**

The administrative record contains many medical records plus opinions from non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and

4

because both the ALJ and Plaintiff's counsel have summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner relies on the ALJ's recitation of the facts. Additionally, it should be noted that none of Plaintiff's treating or examining medical sources have provided an opinion concerning her ability to perform work activities.

## III. The ALJ's Decision

As noted previously, it fell to ALJ Chaykin to evaluate the evidence connected to Plaintiff's applications for benefits. At steps two and three of the required sequential-evaluation procedure, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ found that Plaintiff had many severe impairments—demyelinating disease, migraines, right shoulder impingement syndrome and tendinitis with residuals of surgery, obesity, affective disorder, anxiety disorder, and a somatoform disorder—but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. He rejected Plaintiff's counsel's contention that Plaintiff's disability status is established because she has multiple sclerosis that satisfies Listing § 11.09. (Doc. #6, *PageID* #s 67-68).

At step four of the sequential process, the ALJ concluded that most Plaintiff could do despite her impairments, her residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), was a limited range of light work. He wrote:

> After careful consideration of the entire record, the [ALJ] finds that the

5

> claimant has the residual functional capacity to perform light work…, subject to the following limitations: (1) no climbing of ropes, scaffolds or ladders; (2) occasional stooping; (3) occasional overhead reaching and frequent reaching in all other directions with the right upper extremity; (4) no exposure to dangerous hazards such as unprotected heights or dangerous equipment; (5) limited to performing simple, routine, and repetitive tasks, but not at a production rate pace or strict quota; (6) occasional interaction with supervisors, coworkers and the public; (7) limited to simple instructions and simple work related decisions; (8) no teamwork or tandem tasks; (9) exposure to no more than moderate noise.

*Id.* at 72-73. The ALJ also found at step 4 that Plaintiff's credibility was lacking and that she could not perform her past relevant work as a home health aide, sales clerk, or store laborer.

At step 5, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as photocopy machine operator, marking clerk, and routing clerk. *Id.* at 78-79. This led the ALJ to his final determination that Plaintiff was not under a disability and not eligible for benefits.

## IV. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

6

performing a significant paid job—i.e., "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.

## V. Discussion

### A. <u>Step Three</u>

Plaintiff contends that substantial evidence fails to support the ALJ's evaluation of the evidence under Listing 11.09, the listing for multiple sclerosis. She argues that the ALJ incorrectly found (1) "no source has definitively diagnosed" multiple sclerosis; (2) Plaintiff's gait and station were completely normal; and, (3) she did not have substantial vision problems. (Doc. #7, *PageID* #1504 (quoting, in part, *PageID*# 68)). Plaintiff argues that the ALJ ignored her persistent symptoms, including fatigue, blurry vision, balance problems (including falls), increased intracranial pressure, and headaches. And Plaintiff maintains that her persistent headaches are consistently documented throughout the record, for which she has been hospitalized and received substantial treatment, including lumbar punctures.

If Plaintiff meets Listing 11.09, the disability determination is automatic—*i.e.*, the sequential evaluation stops and benefits are awarded without further inquiry. *See Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 892 (1990); *see also Combs v. Comm'r of Social Security*, 459 F.3d 640, 643 (6th 2006) (en banc).

> Because satisfying a Listing at the third step results in an automatic determination of disability, the evidentiary standards … under these Listings are more strenuous than for claims that proceed through all five steps of the sequential analysis. In assessing whether a claimant meets a Listing, the ALJ must "actually evaluate the evidence," compare it to the requirements of the relevant Listing, and provide an "explained conclusion, in order to facilitate meaningful judicial review."

*Harvey v. Comm'r of Social Security*, No. 16-3266, 2017 WL 4216585, at *5 (6th Cir.

8

2017) (citing, in part, *Sullivan*, 493 U.S. at 532; other citations omitted). In order to meet a Listing-level impairment, and thus be found disabled, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

>Listing 11.09 for multiple sclerosis requires:
>
>>A. Disorganization of motor function as described in 11.04B; or
>>
>>B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
>>
>>C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

ALJ Chaykin rejected Plaintiff's contention that her multiple sclerosis satisfies Listing 11.09. He wrote, "[Plaintiff] exhibits some symptoms and findings consistent with multiple sclerosis, but no source has definitively diagnosed this condition...." (Doc. #6, *PageID* #68). This is incorrect, as the Commissioner acknowledges. The ALJ, moreover, made this mistake at both steps three and four of his sequential evaluation. *See id*. at 68, 76. Plaintiff's neurologist, Barbara Phillips, MD, diagnosed her with multiple sclerosis on April 18, 2016. *Id*. at 1492. Substantial evidence therefore fails to support the ALJ's no-diagnosis finding.

The Commissioner argues that this did not constitute reversible error because a diagnosis alone fails to satisfy the Listing criteria. This is a red-herring argument.

9

Although a diagnosis alone would not satisfy all the criteria of Listing 11.09, "documenting a diagnosis of multiple sclerosis" is one of the essential elements needed to satisfy Listing 11.09(C). *See* Listing 11.00(E). The ALJ's incorrect no-diagnosis finding improperly ignored or overlooked evidence that satisfied one of the key elements needed to establish Listing 11.09(C).

The Commissioner also contends that the ALJ's no-diagnosis finding constituted harmless error because the overall evidence did not show that Plaintiff satisfied the remaining criteria of Listing 11.09. This argument is well taken.

The ALJ found that Plaintiff failed to meet the remaining criteria of Listing 11.09 as follows: "the claimant's gait and station, as well as fine motor dexterity and coordination is [sic] consistently reported to fall within normal limits. The claimant reports visual difficulties at times, but records from Schrimpf Eye Center confirm that her best corrected visual acuity does not approach 20/200, visual field is not reduced to 20% or less after best correction. Finally the record contains no evidence demonstrating reproducible fatigue of motor function with substantial weakness on repetitive activity demonstrated on physical examination…." (Doc. #6, *PageID* # 68). Substantial evidence supports these findings. *See id*. at 523, 603, 609, 617, 660-64, 674, 680, 828, 832, 838, 925, 1084-1196, 1101-02, 1106, 1114, 1118, 1122-23, 1126, 1155, 1162, 1373, 1376, 1382, 1385, 1391, 1394, 1408, 1411, 1420, 1429, 1429.

Plaintiff has also not demonstrated she has a visual impairment as described under either Listing 2.02, 2.03 or 2.04, which she must show in order to satisfy Listing

11.09(B). Simply alleging that the records show that she complained of blurry vision "with and without glasses" (Doc. #7, *PageID#* 1504, citing to Doc. #6, *PageID#* 1095) is not sufficient to show she satisfies the Listing. Even with her diagnoses of Lattice with Atrophic Retinal Hole, Lattice Degeneration, Vitreous Syneresis, and Senile Cataract, these problems were identified before she was treated for them with laser surgery. *Id.* Records from Schrimpf Eye Center confirm the ALJ's finding that her best corrected visual acuity does not approach 20/200, visual field is not reduced to 20% or less after best correction, and there is no evidence demonstrating a visual impairment of 1.00 or greater after best correction. *Id.* at 1084-96.

Plaintiff contends that the ALJ "cherry picked" s treatment record from April 2016 by selecting the note indicating she was experiencing headaches only once a week and overlooking notes showing she was having significant problems with gait and balance and had fallen several times. (Doc. #7, *PageID* #1503 (citing *PageID* #1488). Plaintiff further maintains that the ALJ did not consider her impairments during a two-year period from February 4, 2014 to April 18, 2016. In contrast, the ALJ discussed the evidence of record concerning Plaintiff's medical evaluations and treatment, and her testimony about her headaches and her fractured foot caused by the fall she took 8 weeks before the ALJ's hearing. (Doc. #6, *PageID #s* 73-75). Substantial evidence supports his recognition that "Dr. Phillips noted consistent and normal muscle strength and function, reflexes and sensation, gait, station, and stride, and fine motor function. Dr. Eicher notes some mild findings, including an antalgic gait and decrease[d] sensation on January 13, 2016, but

11

follow up exam by Dr. Phillips again noted normal neurological function, gain, and fine motor coordination." *Id.* at 74 (citing Exhibits 22-f at 1-6 and 28-F at 4); *see also PageID*#s 523, 603, 609, 617, 639, 680, 690, 828, 832.

Plaintiff notes that Homayoun Mesghali, M.D. confirmed the diagnoses of Multiple Sclerosis in "new and material evidence submitted to the Appeals Council." (Doc. #7, *PageID* #1503 (citing Doc. #6, *PageID* #97)). However, the evidence Plaintiff refers to was presented to the Appeals Council, not the ALJ. Since the Appeals Council denied Plaintiff's request for review, that evidence may not be considered in judicial review of the ALJ's decision for legal error or lack of substantial supporting evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) ("[T]he district court cannot consider … new evidence [not presented to the ALJ] in deciding whether to uphold, modify, or reverse the ALJ's decision." (citation omitted)).

Accordingly, Plaintiff's challenges to the ALJ's decision at step three of the sequential evaluation lack merit.

B. <u>Steps Four and Five</u>

Plaintiff maintains that the ALJ erred at step four of the sequential evaluation and the Commissioner—through the ALJ— failed to carry her burden at step five by failing to show there exists a significant number of jobs she can perform that are available in the national economy. Plaintiff, by way of example, points to the consistent documentation throughout the record showing she suffers from headaches for which she has been hospitalized and has received substantial treatment including lumbar punctures. Plaintiff

also relies on an MRIs of her cervical spine and indications in the record that she suffered from daily chronic headaches in November 2014; a constant three-day headache in December 2014; daily headaches in January 2015; a report from Montgomery County listing brain inflammation ("headaches") as one of her disabling medical conditions; two to three headaches per week in September 2015, despite increased medication, forcing her to "lay in darkness with a towel on her eyes"; a headache once a week in April 2016. She also relies on her testimony that she experiences headaches about twice a week lasting up to six hours, which immobilized her and caused her to get nauseated and vomit. Plaintiff also contends that the ALJ's assessment of her residual functional capacity failed to account for the fact that her persistent headaches would likely cause her to be off-task more than ten percent of the workday and absent from work about two days per month.

Part of the ALJ's assessment of Plaintiff's residual functional capacity considered the frequency and severity of her headaches along with her related testimony. The ALJ declined to credit Plaintiff's testimony that she had twice weekly headaches because, in the ALJ's words, "She reported to Dr. Phillips on April 18, 2016 that [she] experienced headaches, 'from time to time,' meaning once a week, and she described the severity as 'only moderate not severe.'" (Doc. #6, *PageID* #74). Dr. Phillips' treatment records confirm this reason for not fully crediting Plaintiff's testimony due to the inconsistency of the information Plaintiff provided Dr. Phillips in April 2016 and her testimony before the ALJ only three weeks later on May 10, 2016. *See id*. at 1488; *see also* Soc. Sec.

Ruling 16-3P, 2016 WL 1119029, *7 (March 16, 2016) ("[I]f an individual's statement about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacity to perform work-related activities …."); *cf. Dragon v. Comm'r of Social Sec.*, 470 F. App'x 454, 466 (6th Cir. 2012) ("Consistency tends to support credibility." (citing *Rogers v. Comm'n of Soc. Sec.,* 486 F.3d 234, 248 (6th Cir. 2007)).

The ALJ also found, "Plaintiff acknowledged that medication has improved the frequency of her headaches and [the] claimant has not sought emergency room or emergent care for break-through headaches at a frequency consistent with her allegations of disabling headaches at least twice a week." (Doc. #6, *PageID* #74). Dr. Phillips' records confirm this. *See id*. at 1488. Plaintiff, moreover, has not shown that substantial evidence fails to support the ALJ's credibility findings. As a result, the ALJ's assessment of Plaintiff's credibility is due great weight and deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff further asserts that the ALJ erred by not accepting the vocational expert's testimony that a hypothetical person who could not work one day a week, or 4 days per month, due to severe headaches could not perform any jobs available in the national economy. Yet, because the ALJ's assessment of Plaintiff's headache testimony is due great and deferential weight, the ALJ was not bound to credit this part of the vocational expert's testimony. Instead, the hypothetical questions the ALJ posed to the vocational

expert were based on his assessment of Plaintiff's residual functional capacity, which substantial evidence supports. This was proper. *See Jones v. Comm'r of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("the ALJ can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.").

Accordingly, Plaintiff's challenges to the ALJ's findings at steps four and five of the sequential evaluation lack merit.

One final note: Although Plaintiff has thus far been unable to establish that her multiple sclerosis constitutes a "disability" within the meaning of the Social Security Act, the strong possibility remains that this progressive, incurable disease will limit her ability to perform work activities in the future to the extent she is under a benefits-qualifying disability.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability be affirmed; and
2. The case be terminated on the docket of this Court.


July 24, 2018                                  *s/Sharon L. Ovington*
                                               Sharon L. Ovington
                                               United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).